Spear, J.
There was considerable conflict of testimony as to a number of minor matters concerning which the parties were at issue. It was shown that the *boy was instructed during the summer vacation of 1907 by his parents, both of whom had been teachers, with the purpose of fitting him for admission to the seventh grade, and at one time, Remington, the superintendent, was called into his office by the relator and requested to put questions to the boy which he did. At the conclusion of the talk, as testified by the relator, he spoke of that being the work of the seventh year and they were practically over it, and the superintendent said the *143 boy ought to go there and it would be easy for him. This expression of opinion is denied on the stand by Remington, who adds that he was in the office not more than four or five minutes and did not go in for the purpose of making an examination.
The relator, although he disclaimed in his petition knowledge of the Board’s rules, on the stand admitted that he had once been a member of the Board of Education and was somewhat familiar with the current rules. He had easy access to them.
The boy was examined to some extent with other pupils by Remington the day before he left the seventh grade room, and there is sharp conflict as to the extent of that examination and as to what the superintendent said to the boy and to the teacher Teal as to the boy’s proficiency, the boy putting it that Remington said the work would be easy for him in the seventh grade and the superintendent denying it and giving his opinion that the boy was not qualified for that grade, which opinion he reported to the Board at its meeting Thursday evening. To some extent Teal corroborates the statements of the boy respecting Remington’s expression of opinion. It is not shown, however, that Teal examined the boy at all except that he heard some or all of the lessons during the four days he was in the seventh grade room.
There is no conflict respecting the proposition that the boy went to the seventh grade room by the direction of his father and without any authority to go there by the Board or knowledge on the part of the Board, or of the superintendent prior to his seeing the boy in that room. The appearance of the boy in the room of the seventh grade with his books cannot reasonably be treated as an application for *144 promotion to that grade since such an application should be made to the Board when in session, and the evidence furnishes no support for the allegation of the petition that the boy applied for admission to the seventh grade. No request was made to either the Board or superintendent, the boy testifies, for leave to go into that room. He also says that when Mr. Remington found him there Friday morning he directed him to go into the sixth grade, but that, in obedience to his father’s direction, he took his. books and went home. The superintendent testifies that he did not expel any from the seventh grade room, and there is nothing in the testimony which warrants the conclusion that the boy was expelled from the seventh grade room as alleged in the petition except in the sense that he was directed to go to the sixth grade room to which he had been promoted.
The testimony also shows that when in the fifth grade the boy was seven years of age although the age of scholars generally was from ten to twelve, averaging eleven years. The teacher in the fifth grade, Miss Gibbs, testifies that her examination of the boy at the end of’ the spring term of 1907 showed that his work was exceedingly good in some branches and in other branches not quite so good. She spoke to him concerning his writing and as tO' mathematics, in which his work was not as high as that of quite a number of the class who were promoted to the sixth grade, and advised that he had best do some work at home to perfect himself in those branches; none were promoted from the fifth grade to the seventh that year; it had been done in former years but only by direction of the Board and the superintendent. In her judgment the boy was. *145 not then qualified to enter the seventh grade; she had no personal knowledge of his proficiency after that.
It appears that the superintendent reported to the Board at its meeting Thursday evening (a meeting which he had expected would be held Tuesday evening) that he had made a test of three children, including Terry, and that they were not qualified to enter the seventh grade. The Board took no action and gave no authority in any way for the boy to be promoted to the seventh grade.
Testimony was given by two or three persons who then were or had been teachers, besides Mr. Kiefer, to the effect that they had examined the boy shortly after he left the school and found him, in their judgment, qualified to enter the seventh grade.
These references to the evidence are made not with a view of reviewing all of it, nor for the purpose of attempting to weigh those parts which are in conflict, but for the purpose only of indicating the character of the case presented. It suffices, as conclusion, to say that the trial court’s judgment imports a finding that, upon the whole evidence, the boy was qualified to enter the seventh grade both at the time he attempted to enter and at the time of the trial.
It appears affirmatively and there is no conflict in respect to' it that no request was made of the Board, either by the relator or the son, for the latter’s promotion to the seventh grade, and each knew that his promotion card entitled him to enter only the sixth grade; also that at least the father knew that the rules gave authority for promotion to pass over the sixth grade to the Board and to the Board only. It is also shown without denial that the Board did not *146 have pres'ented to it at any time a recommendation from the superintendent, or even from a teacher, to the effect that the pupil was qualified for entrance to the seventh grade, but on the contrary, as herein-before stated, did have before it the expressed opinion of the superintendent that he was not so qualified.
It is manifest from the whole record that the circuit court acted upon the belief that the question whether or no the pupil was fitted to enter the seventh grade, and should have been promoted from the fifth to the seventh, was rightfully to be determined by the court rather than- by the school authorities. But is this the law ?
Section 4017, Revised Statutes, provides that the board shall have the management and control of all the public schools in the district. Section 3985 makes provision for the adoption of rules and regulations as follows: “The board of education of each district shall make such rules and regulations as it may deem necessary for its government and the government of its appointees and the pupils of the schools; and no meeting of a board of education not provided for by its rules or by-laws shall be legal unless all the members thereof have been notified as provided for in section thirty-nine hundred and seventy-eight.”
Following this authority the Board had'made and promulgated rules and regulations as hereinbefore given. These rules seem to well cover the case in hand and to be appropriate to the .objects intended. To us they appear reasonable, and quite well calculated to secure, in their application to the great body of pupils, a good school government, with as liberal treatment to the individual pupil as proper *147 discipline will permit. The right of the pupil between the ages of six and twenty-one years, residing in the district, to attend the'schools, receive like instruction with others, and be promoted from grade to grade on the grounds of merit and proficiency only, is provided for, the pupils on their part to conform to the rules and regulations of the school and obey the directions of the teachers and superintendent. The superintendent is to act under the advice and direction of the Board; have complete supervision of the school, and see that all the rules and regulations of the Board are enforced. He is also to direct as to the classification and examination, and, under the advice of the Board, to the promotion of pupils. Abundant examinations are provided for, the manuscript to be kept on file for inspection of any who desire, and the standing of each pupil to be determined from the daily recitations, reviews, tests and examinations in such manner as the superintendent may direct. ^
The complaint in the present case is that the application of some of these rules to this pupil worked an injustice, in that it denied him the right secured by Section 4013, Revised Statutes, to freely enter the school of the district, and thereby deprived him of a right of promotion which because of his advanced proficiency he was entitled to enjoy, viz: to be promoted from the fifth to the seventh grade on the ground of merit. But who is empowered to judge of the merit and the proficiency? Is it the father of the child or the school authorities? The trial court seems to have assumed that, in the first instance, it is the father, and finally the court. If the father in the first instance had not the right to determine the matter and direct his boy to refuse to *148 go to the sixth grade room to which the school authorities had promoted him, but go to the seventh grade room and insist on remaining there, it is difficult to see how the court could have any power to interfere when asked to deal with a situation in which the parent undertook to do as in this case, viz: override the school authorities in the management of the school. It is insisted in argument with great force and eloquence that the evidence conclusively shows that the boy was abundantly qualified to enter the seventh grade. The court, giving effect to all the evidence presented, so found and we are not inclined to question that finding except to say that it was irrelevant to the real issue in the case. But the question is not what in fact were the qualifications of the boy, but what was the duty of the Board on that Thursday evening when the situation as to the three pupils was called to its attention. The boy may have been qualified. Indeed it appears from the whole case that the pupil was mentally a precocious boy. Whether it was best for the boy that he be thus crowded we need not inquire, though that consideration is sought to be impressed upon us, pro and con. People, including educators, differ respecting the comparative harm likely to come to a child by untoward cramming and crowding on one hand, or, on the other hand, being kept back in his studies, with the probable resulting opportunity to acquire a habit of idling and wasting time, and probably will continue to differ to the end of time. As yet no better solution of the problem seems to have been made than to leave its determination to the parents, who presumably have more than any others the good of the child at heart. But though this conclusion be accepted it would not jus *149 tify the claim on the part of the parent to insist upon his way in the face of contrary opinion and decision on the part of the school authorities.
In the light of the facts as they appear, what duty devolved on the Board at the commencement of the proceeding in mandamus which it had refused to perform? We are unable to perceive any. It is to be emphasized that no application had been made to the Board requesting it to set ^iside the proper action of the superintendent and the teacher of the fifth grade as to the promotion of the relator’s son, and direct an order of promotion to the seventh grade. It had before it, at the only meeting which the record shows was held at which its attention was at all called to this boy, the information that he had gone to the seventh grade room without authority, and the opinion and recommendation of its superintendent that the pupil was not qualified for entry to that grade. No abuse of discretion is apparent in its refusal to act. Indeed, the refusal was the natural and proper result of the facts as they then appeared to the Board.
We are of opinion that the initial error occurred in the common pleas in overruling defendant’s motion to make the petition more definite, and later in sustaining the demurrer of relator to the second defense of the answer. It is not, however, necessary to elaborate this feature since the case is susceptible of final disposition on the merits as made on the uncontradicted evidence. Substantially all of the testimony offered by relator was objected to and proper exception saved. By the testimony of the relator and his son it was made clear that the pupil was sent to the room of the seventh grade by his father and without permission of the school *150 authorities. In other words, it was shown that he was an intruder. The willingness if it existed at any time, of the superintendent that the boy should go to that room could not avail as the rule respecting promotions provided that they are to be made only, as conditions precedent, on the approval of the Board based upon the recommendation of the teacher and superintendent. The.testimony showed that neither condition obtained. The superintendent was a subordinate of the Board, and any action on his part in regard to promotion, as well as other matters, was required to be “under the advice and direction of the Board.” The duty, therefore, to “see that all the rules and regulations of the Board are enforced,” required him, without reference to any expression of individual opinion that he may have given as to the boy’s proficiency, to direct the boy to go to the room of the grade to which he had been promoted. So soon as this condition was shown it became the duty of the court to arrest the evidence and dismiss the relator’s petition. It should be borne in mind, as an obvious and controlling fact, that the statutes impose the duty of the regulation and conduct of all public schools upon the Boards of Education and not upon the courts, and interference by the courts with the discharge of those duties should not be lightly entered upon. If every little neighborhood dispute which develops a difference of opinion with respect to the promotion of a pupil, or some other controversy between parent and teacher of no greater seriousness, is to be rushed into the courts, the natural effect will be to unduly crowd the dockets and to impede the important and useful litigation necessarily demanding the attention of the courts. *151 It is insisted by relator’s counsel that the Board of Education was composed of uneducated men and hence was not qualified to judge of the merits of the pupil for promotion. We can not know about that. It is enough to know that the statutes impose the duty on such boards, they having the aid af-’ forded by the teachers and superintendent, and if in any instance they are hot qualified for the performance of such duty it would become the voters of the district to elect men who would be qualified.
These conclusions require the reversal of the judgment of the circuit court and the dismissal of the petition at the costs of the relator, which judgment will be accordingly entered.

Reversed.

'Crew, C. J., Summers, Davis, Shauci-c and Price, JJ., concur.